[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
This is an action for specific performance and damages based on a contract for the sale of about 38 acres of land in Seymour owned by the defendant, The Ansonia/Derby Water Company, for the price of $228,000. Since the defendant (hereafter called the Company) is a public service company, the State Department of Public Utility Control (DPUC) and the State Department of Health Services (DOHS) have to give their approval of any proposed sale of water company land. Sections16-43 and 25-32 C.G.S. The Company filed an application with the DPUC, which approved the application on September 10, 1985, authorizing sale of the property subject to several conditions, one of which was that DPUC's approval was made conditional by the statute upon approval of the DOHS.
On September 27, 1985, the Company and the plaintiffs signed the contract which is the basis for this dispute. The purchase price was $228,000, and a 10% deposit of $22,800 was paid to the Company. An error was discovered in the description of the property in the contract, and a new contract dated February 4, 1986 was signed. The contract provided for a closing date of June 30, 1986 and was subject to several conditions. It was contingent upon the Company receiving approval from both the DOHS and the DPUC, and expiration of the statutory right of the Town of Seymour and the Connecticut Department of Environmental Protection (DEP) to exercise a right of first refusal under section 16-50d of the Connecticut General Statutes. The contract provided that if the Company had not received all approvals by June 30, 1986, the scheduled closing date, the seller-company would return to the plaintiffs all sums paid under the contract with interest, and upon such payment the agreement would terminate and neither party would have any liability to the other under it.
The plaintiffs-buyers were concerned about the contingencies being met by June 30, 1986 and contacted the CT Page 1881 Company's attorney, Timothy Dillon. Dillon wrote back to them by letter of February 20, 1986 that "if the approvals have not been received by June 30, 1986 then you can receive a refund of your deposit" or can elect to extend the contract to purchase, until such time that the approvals are received," and "the Water Company is still hopeful that the approval will be obtained on schedule for a June closing." Approval of the DOHS had not occurred as of June 30, 1986. Apparently the delay was attributable, at least in part, to the fact that the DOHS was in the process of adopting new regulations concerning water supply plans and there is a factual question whether DOHS approval could be obtained for the sale until the regulations were adopted. On July 9, 1986, the plaintiffs' attorney wrote Dillon requesting a 6 month extension of the closing date, enclosing a written modification signed by the plaintiffs, and requesting the Company to give written approval to the extension; Dillon wrote back to the plaintiffs' attorney on July 25, 1986 stating that the Company had not been able to obtain DOHS approval by June 30, 1986, and returning the plaintiffs' deposit. The plaintiffs claim that they are ready, willing and able to purchase the subject property and that Dillon's letter of February 20, 1986 was a modification of the contract, so the fact that the closing did not occur June 30, 1986 does not defeat a right to purchase the subject property. They further claim that the defendant frustrated the contract by not promptly processing the application before the DOHS.
The Company has moved for summary judgment claiming that the plaintiffs are not entitled to specific performance for several reasons, which can be summarized as follows: (1) approval of both DPUC and DOHS have not been obtained, and this is a condition precedent to any sale under the contract; (2) Dillon did not have authority to modify the contract and extend the closing date; and (3) even if Dillon was authorized or the company is bound by his actions, there is no mutual assent to an indefinite closing date. Both parties have attached numerous documents to their briefs in support of their respective positions.
A summary judgment may be granted under section 384 of the Connecticut Practice Book if the pleadings, affidavits and other proof submitted with the motion show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connelly v. Housing Authority, 213 Conn. 354, 364; Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 11. To satisfy this burden, the moving party must make a showing that it is quite clear what the truth is, and that it excludes any real doubt as to CT Page 1882 the existence of any material fact. Fogarty v. Rashaw,193 Conn. 442, 445. In determining whether there is a material issue of fact, the evidence is considered in the light most favorable to the non moving party. Strada v. Connecticut Newspapers, Inc., 193 Conn. 313, 317; Connell v. Colwell,214 Conn. 242, 246, 247. The test as to whether a summary judgment should be granted, namely that the moving party must be entitled to judgment as a matter of law, is resolved by applying to the established facts the same criteria as is used in determining whether a party would be entitled to a directed verdict on the same facts. Connelly v. Housing Authority, supra, 364; Connell v. Colwell, supra, 247.
A material fact is a fact which will make a difference in the result of a case. Hammer v. Lumberman's Mutual 
Casualty Co., 214 Conn. 573, 578. Where there is an issue of material fact the court cannot decide that issue. Batick v. Seymour, 186 Conn. 632, 647.
The Company argues initially that Dillon did not have authority from it to modify the contract by extending the closing date. The statements in the letter of February 20, 1986 can be construed as authorizing the buyers to extend the closing date until approvals are obtained from the State and local agencies. It also contains the implication, although the facts may be otherwise, that the company authorized the extension. As a general rule, the acts of an attorney are imputed to a client when they are performed in the furtherance of the business for which the attorney has been retained. Allen v. Nissley, 184 Conn. 539, 543; Wesson v. F. M. Heritage Co., 174 Conn. 236, 242, 243. Clients are generally bound by the acts of their attorneys. Monroe v. Monroe, 177 Conn. 173, 181. Knowledge of the attorney is imputed to the client when it occurs in the business in respect to which the attorney was employed. Lebowitz v. McPike, 157 Conn. 235, 242. Statements of an attorney may be effective to cause an extension of time for a closing of title and be binding upon the client. See Three S. Development Co. v. Santore, 193 Conn. 174, 177. While the Company argues that there are exceptions to these rules and that it should not be bound by the unauthorized conduct of its attorney, this is a question of fact which cannot be resolved on a motion for summary judgment.
Since, for purposes of this motion, it is presumed that Dillon's conduct resulted in some extension of the closing date, the fact DPUC and DOHS approvals had not been obtained by June 30, 1986 is not fatal to the plaintiffs' claim. Moreover, time is not of the essence for contracts involving sale of real property, Kakalik v. CT Page 1883 Bernardo, 184 Conn. 386, 392, 393. The absence of a time for performance in a contract does not ordinarily make it unenforceable, because the law will imply a reasonable time for performance if none has been specified. Breen v. Phelps, 186 Conn. 86, 93. The Company's brief at Page 9 and an affidavit dated August 16, 1990 signed by the president of the Company states that the DOHS gave approval for the Company to sell its land in July 1988. The DPUC previously approved the sale, subject to DOHS approval. The Company claims that even though DPUC previously gave approval, that it must give additional approval because it must consider current fair market value under its regulations, and its value may have changed between September 1985 and July 1988. The defendant also claims that after DPUC approval that a right of first refusal exists for the Town of Seymour and the DEP. Sections 16-50c and 16-50d C.G.S. While a waiver of the right of first refusal may not have been obtained and may still be required, the statutory provisions only allow the Town of Seymour and the DEP to obtain the subject property instead of the plaintiffs. Assuming this prevents the plaintiffs from obtaining specific performance of the contract with the Company, it would not necessarily defeat a claim for damages which is also requested in the prayer for relief of the complaint.
It is undisputed that the contract was contingent upon the Company obtaining the required approvals from the DPUC and DOHS. These clauses in the contract were a condition precedent, namely a fact or event which the parties intended must exist or take place before there would be a right to performance. Ruscito v. F-Dyne Electronics Co., 177 Conn. 149,172; Lach v. Cahill, 138 Conn. 418, 421. To overcome the problem that the approvals required in the contract have not all been obtained, the plaintiffs argue that the defendants failure to obtain regulatory approval is due to the fact that it cancelled the contract in July 1986 and did not pursue it. The concepts of impossibility or impracticability of performance are an exception to the traditional rule that contracts should be enforced as written. Sink v. Meadow Wood Country Estates, Inc. 18 Conn. App. 569, 575. "A party claiming that a supervening event or contingency has prevented and thus excused a promised performance must demonstrate that: (1) the event made the performance impracticable; (2) the nonoccurrence of the event was a basic assumption on which the contract was made; (3) the impracticability resulted without the fault of the party seeking to be excused; and (4) the party has not assumed a greater obligation that the law imposes." Dills v. Enfield,210 Conn. 705, 717. A party to a contract also may be unable to escape its contractual obligations when its own actions CT Page 1884 render performance of the contract impossible. West Haven Sound Development Corporation v. West Haven, 201 Conn. 305,315. It is arguably implicit in the original contract that the Company would make reasonable efforts to obtain DPUC and DOHS approvals within the time limits in the contract or at least would not frustrate the obtaining of those approvals. If in fact Dillon's letter of February 20, 1986 had the effect of extending the closing date beyond June 30, 1986, the Company's action in terminating the contract on July 25, 1986 and failure to pursue DOHS approval may be waiver of the June 30, 1986 deadline for obtaining the approval as provided in the original contract. There are questions of fact here as to whether the Company could have obtained all necessary approvals at an earlier date if it had not considered the contract terminated, and the degree of diligence exercised by the Company in obtaining the approvals. Where a party to a contract agrees to a condition which must be fulfilled before a contract will be performed, but must take some actions in order for the condition to be fulfilled, the law implies a promise that he will exert reasonable efforts to fulfill the condition or obtain the approval. Phillipe v. Thomas,3 Conn. App. 471, 473 (buyer has obligation to make reasonable effort to obtain a mortgage committment to fulfill a mortgage contingency clause); Luttinger v. Rosen, 164 Conn. 45, 47
(due diligence required to seek financing); Lach v. Cahill, supra, 422. The Court agrees with the defendants that it cannot conclude whether or not the necessary approvals to meet the contingencies in the contract could have been procured within a reasonable time for a closing of title, because the defendant cancelled the contract with the plaintiffs and notified the DPUC on August 12, 1986 that the contract, which the DPUC was to approve, had expired.
The Company is correct that there are legal problems with an open ended modification for a closing date on a real estate contract. However, the length of the extension of the contract, if any, beyond June 30, 1986, and the maximum legal limit for an extension present mixed questions of law and fact. There is a question of the intent of the plaintiffs and Dillon acting on behalf of the Company as to the time period for extension of the closing. Intent is an issue which is not appropriate for decision on a motion for summary judgment. Batick v. Seymour, supra, 646, 647; Nolan v. Borkowski,206 Conn. 495, 510 (dissenting opinion). Summary judgment is not well adapted to cases of a complex nature which need the full exploration of a trial. United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 375.
It may well be, as the Company contends, that Dillon's conduct was not authorized, did not bind the Company and was CT Page 1885 ineffectual to extend the termination date of the contract. The fact that the contingencies were not met by June 30, 1986 or within a reasonable time thereafter may also be a valid defense at the time of trial, but the facts supporting those defenses are not sufficiently clear cut to meet the directed verdict test and entitle the Company to judgment as a matter of law. Connelly v. Housing Authority, supra, 364.
The motion for summary judgment is denied.
ROBERT A. FULLER, JUDGE.